IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| LAURA BRITO, as Independent Administrator of the Estate of ALFONSO FRANCO, Deceased | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 14-3282 |
| WEXFORD HEALTH SOURCES, INC., a Florida Corporation doing business in the State of Illinois; PATRICIA SMITH, in her individual and official capacities; DIANE ZUCCO, in her individual and official capacities; MEGAN EGIMANN, in her individual and official capacities; MARY WALSH, in her individual and official capacities;  REBECCA PASSONI, in her individual and official capacities; UNKNOWN WEXFORD NURSES JOHN DOE AND JANE DOE 1-25, in their individual and official capacities; ROSALINA GONZALEZ, in her individual and official capacities; and HEALTH PROFESSIONALS, LTD., an Illinois Corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

# OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause comes before the Court on the Motion to Dismiss (d/e 71) filed by Defendants Rebecca Passoni, Diane Zucco, Patricia Smith, Mary Walsh, and Megan Eggimann (these defendants collectively referred to as the Nurse Defendants); Wexford Health Sources, Inc. (Wexford); and Health Professionals, Ltd. (Health Professionals). Defendants seek to dismiss the state law claims against them on the ground that Plaintiff Laura Brito, as Independent Administrator of the Estate of Alfonso Franco, deceased, failed to file a sufficient written report as required by 735 ILCS 5/2-622(a)(1). Because the written report is sufficient, the Motion to Dismiss is DENIED.

## I. BACKGROUND

In February 2015, Plaintiff Laura Brito, as Independent Administrator of the Estate of Alfonso Franco, deceased, filed a Third Amended Complaint (d/e 68) alleging claims under 42 U.S.C. § 1983, 740 ILCS 180/2 (the Illinois Wrongful Death Act), and 755 ILCS 5/27-6 (the Illinois Survival Act). The claims arise out of the

medical care Franco received during his incarceration at the Taylorville Correctional Center.

Specifically, Plaintiff alleges that in October 2010, while housed at the Taylorville Correctional Center, Franco began complaining to medical staff about his physical condition. Between October 2010 and July 2012, Franco repeatedly complained to medical staff that he suffered various symptoms, including constipation, pain upon movement, back pain, nausea, inability to urinate, blood in his stools, rectal bleeding, rectal pain, dizziness, abdominal pain, and leaking stool. Compl. ¶¶ 20, 24, 26, 28, 30, 31, 32, 35, 36, 38, 39, 41, 43, 44, 45, 48, 52, 55, 56, 58, 59, 62, 67, 72. He also experienced significant weight loss. Id. ¶¶ 35, 53, 57. Between October 2010 and July 2012, various Defendants at various times failed to provide medical workups or diagnostic studies (¶¶ 23, 25, 27, 29, 30, 53, 60, 68 ); failed to order a colonoscopy (¶¶ 27, 33, 35, 37, 42, 47, 50, 54, 58, 65 ); failed to provide a referral for a physician evaluation (¶¶ 28, 31); and failed to make note of the ongoing symptomology that was indicative of anal carcinoma (¶ 47). In July 2012, no significant pain medication was provided to Franco despite his excruciating

pain. Id. ¶ 73. Ultimately, in July 2012, Franco was transported to Taylorville Memorial Hospital, where an extensive CT radiological examination revealed metastatic disease of the liver, tumors in the rectum, and metastatic lesions of the left lung field. Id. ¶¶ 75, 79. Franco was transferred to St. John's Hospital and diagnosed with Stage 4 rectal cancer. Id. ¶¶ 80, 81. Over 70% of Franco's liver had been replaced by an invasive tumor. Id. ¶ 82. A colonoscopy revealed a 20-centimeter polyp in the sigmoid colon. Id. ¶ 84. On August 8, 2012, Franco passed away from Stage 4 colorectal cancer. Id. ¶ 85.

The Third Amended Complaint contains two federal claims and 40 state law claims. The state law claims against the Nurse Defendants, Wexford, and Health Professionals are at issue here.

Those claims include state law wrongful death and survival actions against each of the Nurse Defendants alleging that the nurses ignored Franco's serous medical needs, failed to properly diagnose Franco's condition, failed to properly treat Franco's condition, failed to provide timely access to adequate medical evaluations and treatment, and otherwise acted negligently toward Franco. See Compl. Counts 7, 9, 11, 13, 15, 17, 19, 21, 23, 25;

see also Counts 27 and 29 against unknown nurses. Plaintiff also brings wrongful death and survival actions against Wexford and Health Professionals on a respondeat superior theory based on the conduct of Dr. Gonzalez, the named nurses, and the unknown nurses. See Counts 3, 5, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30 (Wexford); Counts 31-42 (Health Professionals).[1]

Plaintiff attached to the Third Amended Complaint an Attorney's Affidavit (d/e 68-2) and a physician's written report as required by Illinois law. See 735 ILCS 5/2-622(a)(1) (requiring, in any action seeking damages for injuries or death by reason of medical, hospital, or other healing art malpractice, that the plaintiff's attorney attach an affidavit asserting, in part, that the attorney consulted with a health professional who determined in a written report that there is a reasonable and meritorious cause for filing the action). The physician's written report was provided by Michael T. Puerini, M.D., a family physician specializing in prison medicine. See Aff. of Michael T. Puerini (d/e 68-2) (Exhibit A).

---

[1] Counts 1, 2 and 4 are brought against Dr. Gonzalez, who is not a party to the Motion to Dismiss. Count 6 is a Monell claim brought against Defendant Wexford. See Monell v. Dept. of Social Servs. of the City of N.Y., 436 U.S. 658, 691 (1978) (liability based on an unconstitutional policy or practice).

The written report specifically names Dr. Gonzalez and also refers to the "nursing staff." The report does not mention Health Professionals at all and only makes a vague reference to a Wexford administrator. See ¶¶ 19, 20.

In the report, Dr. Puerini states that he reviewed Franco's medical records. Puerini Aff. ¶5. The six-page Affidavit details the contents of the medical records, noting in particular that Franco repeatedly complained of constipation and suffered from weight loss. Id. ¶ 10.

Dr. Puerini asserts that, despite Franco's "classic symptoms of colon cancer," Dr. Gonzalez failed to conduct a comprehensive examination, consider a colonoscopy, or offer a differential diagnosis. Id. ¶ 9. Dr. Puerini states that, if the early findings had been acted on, Franco might still be alive today. Id.

Dr. Puerini also notes that Franco was seen by nursing and medical staff at least 15 times for complaints of constipation. Puerini Aff. ¶ 10. Despite unexplained weight loss of 25 pounds, back pain (which was never medically evaluated), and ongoing complaints of constipation, no serious medical evaluation was ever done. Id.

Dr. Puerini found that Franco's medical chart notes were virtually illegible and found no evidence of a clinical decision making process. Puerini Aff. ¶ 12. The care delivered at the Facility was characterized by frequent visits and no significant evaluation or treatment being delivered for medical complaints. Id. ¶ 12. For example, on May 24, 2012, Franco appeared pale to the nurse and complained of dizziness. Id. ¶ 18. No significant evaluation was done. Id.

Dr. Puerini notes that the infirmary is an area of the facility that is operated for the purpose of providing patients skilled nursing care. Puerini Aff. ¶ 21. When Franco was in the infirmary (June 19, 2012 through July 8, 2012), the nurse's notes state "continue plan of care," but there was no skilled nursing care delivered and no written or understood plan of care for Franco. Id.

Dr. Puerini states that "[t]he substandard infirmary care continued in this manner for three weeks." Puerini Aff. ¶ 22. Franco remained undiagnosed despite being in the infirmary, an environment that is specifically designed to diagnose and treat illness. Id. Dr. Puerini describes the nurses and doctors as

"apparently oblivious to what should have been obvious to any neophyte health care student." Id. He is also critical that a patient with rectal bleeding, abdominal and rectal pain, firmness in the right upper quadrant abdomen, and frequent stooling was provided treatment that consisted only of watching him and offering diapers, laxatives, and over-the-counter treatment for supposed hemorrhoids. Id.

Dr. Puerini further notes that, despite Franco's terrible complaints of pain while in the infirmary, Franco received no pain medication. Puerini Aff. ¶ 23. In fact, it did not appear that pain medication was even considered. Id.

Dr. Puerini notes that early diagnosis is the key to successful treatment of rectal cancer. Puerini Aff. ¶ 25. A colonoscopy is "universally accepted as the test of first choice for the diagnosis of rectal bleeding." Id. Yet, a colonoscopy was not performed until Franco was transferred to St. John's Hospital in July 2012. See Id. ¶¶ 9, 10, 24, 25. Dr. Puerini concludes that a meritorious case exists against Wexford, Dr. Gonzalez, and the nursing staff at the Taylorville Correctional Facility for deliberate indifference and professional negligence. Id. ¶ 26.

## II. ANALYSIS

Wexford, Health Professionals, and the Nurse Defendants seek dismissal of the counts against them on the basis that Plaintiff failed to comply with the written report requirements contained in 735 ILCS 5/2-622.

Section 2-622 of the Code of Civil Procedure was enacted to "reduce the number of frivolous suits that are filed and to eliminate such actions at an early stage." DeLuna v. St. Elizabeth's Hosp., 147 Ill. 2d 57, 65 (1992). Section 2-622(a)(1) requires that a plaintiff's attorney (or a pro se plaintiff) in a medical malpractice action attach an affidavit to the complaint asserting that the affiant has consulted and reviewed the facts of the case with a health care professional who has determined in a written report that there is "a reasonable and meritorious cause for the filing of such an action." 735 ILCS 5/2-622(a)(1). The written report must be attached to the affidavit and must clearly identify "the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists." Id. This requirement applies to medical malpractice actions filed in federal court. Hahn

v. Walsh, 762 F.3d 617, 629 (7th Cir. 2014); Rusinowski v. Village of Hillside, 835 F. Supp. 2d 641, 652 (N.D. Ill. 2011).

The qualification requirements of the reviewing health care professional differ depending on the occupation of the defendant sued. When the defendant is a dentist, podiatrist, or psychologist (among other listed professions), the written report must be from a health professional licensed in the same profession. 735 ILCS 5/2-622(a)(1). For "all other defendants," the written report must be from a "physician licensed to practice medicine in all its branches." Id.; see also Shanks v. Memorial Hosp., 170 Ill. App. 3d 736, 739 (1988) (finding, under the language of the statute, that a plaintiff must "consult a physician licensed to practice medicine in all its branches" when the defendant is a nurse); Moyer v. S. Ill. Hosp. Serv. Corp., 327 Ill. App. 3d 889, 901 (2002) (relying on Shanks and finding that "hospitals and nurses fall under the category of 'all other defendants'").

The § 2-622 requirements are to be liberally construed and are not intended to create insurmountable pleading hurdles. Mueller v. N. Suburban Clinic, Ltd., 299 Ill. App. 3d 568, 573 (1998) (noting that while the affidavit and report requirements "do

not rise to the level of substantive elements of a claim for medical malpractice, neither should they be viewed as empty formalism"); Hull v. S. Ill. Hosp. Servs., 356 Ill. App. 3d 300, 305 (2005) (noting that the statute "is a tool to reduce frivolous lawsuits by requiring a minimum amount of merit, not a likelihood of success"). Nonetheless, if the plaintiff fails to satisfy the requirements of § 2-622(a)(1), dismissal is mandatory. 735 ILCS 5/2-622(g). The court has the discretion to dismiss with or without prejudice, but the court should give a plaintiff an opportunity to amend before the action is dismissed with prejudice. Cammon v. W. Suburban Hosp. Med. Ctr., 301 Ill. App. 3d 939, 949-50 (1998); Sherrod v. Lingle, 223 F.3d 605, 614 (7th Cir. 2000).

Defendants argue that Plaintiff failed to comply with the requirements of § 2-622 because Plaintiff did not attach a separate report for each named Defendant. Defendants also argue that the report attached is inadequate because it contains nothing more than conclusory allegations and fails to identify specifically the standard of care required of Defendants and how Defendants allegedly fell short of that standard.

The statute specifically requires that a separate certificate and written report be filed as to each defendant named in the complaint. 735 ILCS 5/2-622(b). However, Illinois courts have held that a single report can satisfy § 2-622 so long as the report: (1) is broad enough to cover multiple defendants; 2) adequately discusses the deficiencies in the medical care rendered by each defendant; and (3) contains the reasons in support of the health professional's conclusion that a reasonable and meritorious cause exists for the filing of the action as against each of the defendants. Mueller, 299 Ill. App. 3d at 573. Moreover, when a defendant's liability is wholly vicarious, a written report is not required so long as the report complies with § 2-622 with regard to the agent or employee on whose acts the vicarious liability is based. Id.; Comfort v. Wheaton Family Practice, 229 Ill. App. 3d 828, 833 (1992) (involving vicarious liability of a partnership).

Here, the liability of Wexford and Health Professionals is based solely on a respondeat superior theory. Plaintiff alleges that Wexford and Health Professionals are liable for the actions of Dr. Gonzalez and the Nurse Defendants due to an employment or agency relationship between the corporate entity and the medical

providers. See, e.g., Compl. Count 5 ¶¶ 96, 97. No challenge has been made to the sufficiency of the written report as to Dr. Gonzalez. Therefore, no report is needed for Wexford or Health Professionals because the requirements are met with regard to Dr. Gonzalez, the employee or agent upon whose acts the vicarious liability is based. See Avakian v. Chulengarian, 328 Ill. App. 3d 147, 160 (2002) ("a report speaking to the acts of an agent is sufficient to support a count against the principal, even though the principal is not specifically named in the report").

This leaves the issues of whether the report is sufficiently broad to cover the Nurse Defendants, sufficiently discusses the deficiencies in medical care given by the Nurse Defendants, and contains the reasons in support of Dr. Puerini's conclusion that a reasonable and meritorious cause exists for filing the action as to the Nurse Defendants. See, e.g., Mueller, 299 Ill. Ap. 3d at 573. Defendants also argue that the report attached is inadequate because it contains nothing more than conclusory allegations and fails to identify specifically what the standard of care required of the Nurse Defendants, and how the Nurse Defendants allegedly fell short of that standard.

Liberally construing the written report, the Court finds the report sufficient. The recitation of the contents of the report set forth above shows that the report is broad enough to cover Dr. Gonzalez and the Nurse Defendants. Moreover, the report discusses the appropriate standard of care, how the Nurse Defendants failed to meet that standard of care, and states the reasons for Dr. Puerini's conclusion that a reasonable and meritorious cause of action exists.

The report notes that the Nurse Defendants should have recognized the classic symptoms of colon cancer and should have provided skilled nursing care to Franco when he was in the infirmary. Puerini Aff. ¶¶ 9, 21. However, the Nurse Defendants did not recognize the classic symptoms of colon cancer, note Franco's weight loss, create a plan of care, deliver skilled nursing care, or provide or even consider providing pain medication. Id. ¶¶ 9, 21, 22 (noting the substandard infirmary care), 23. A colonoscopy was never considered or mentioned as a therapeutic option. Id. ¶ 22. Dr. Puerini criticizes the treatment of Franco with diapers, laxatives, and over-the-counter treatment for hemorrhoids when Franco was suffering from rectal bleeding,

abdominal and rectal pain, firmness in the right upper quadrant abdomen, and frequent stooling.  Id.  Dr. Puerini describes the nurses and doctors as "oblivious to what should have been obvious to any neophyte health care student."  Id.

Moreover, the fact that the written report refers to "nursing staff" rather than each individual nurse by name does not change this conclusion.  The report identifies the course of treatment and the failures of the nursing staff as a whole during the course of Franco's treatment.  Under the circumstances of this case, where the treatment extended over a nearly two-year period and involved many members of the nursing staff, the Court finds the report sufficient even though it refers to the nursing staff as a whole and not to each nurse by name.  See, e.g., Sherrod, 223 F.3d at 614 (finding a report that referred to the prison nursing and medical staff, discussed the course of treatment, and concluded that the medical and nursing staff failed to properly diagnose the plaintiff's illness was "not wholly insufficient" and "certainly approached the borderline of acceptable detail in a physician's merit review").

## III. CONCLUSION

For the reasons stated, the Motion to Dismiss (d/e 71) is DENIED. Defendants shall file an Answer on or before April 13, 2015.

ENTER: March 26, 2015

FOR THE COURT:
                         s/Sue E. Myerscough
                       SUE E. MYERSCOUGH
                       UNITED STATES DISTRICT JUDGE